**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BRYAN PEREZ FLORES (A No. 204-649-818),<br>Petitioner,<br>v.<br>WARDEN, et al.,<br>Respondents. | Case No. 1:26-cv-06283-JLT-EGC<br><br>ORDER WITHDRAWING REFERENCE TO THE ASSIGNED MAGISTRATE JUDGE; GRANTING IN PART THE PETITION FOR WRIT OF HABEAS CORPUS; AND DIRECTING RESPONDENTS TO PROVIDE A SUBSTANTIVE BOND HEARING<br><br>(Doc. 1) |

## I. INTRODUCTION

Before the Court is Bryan Perez Flores's petition for writ of habeas corpus brought under 28 U.S.C. § 2241 challenging his ongoing detention. (Doc. 1.) This matter was initially referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. In the interest of justice and to promote judicial efficiency, the undersigned hereby withdraws that reference, and for the reasons set forth below, **GRANTS IN PART** the habeas petition (Doc. 1).

## II. LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens

in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A.A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

## III. FACTUAL BACKGROUND

Petitioner is a citizen of Mexico who came to the United States as a minor in May 2013. He has lived in the United States with valid status under Deferred Action for Childhood Arrivals. (*See* Doc. 1 at 2; Doc. 6-1 at 1, 2); 8 C.F.R. § 236.22(b)(1) ("[A] request for deferred action under this section may be granted only if USCIS determines in its sole discretion that the requestor meets each of the following threshold criteria . . . Came to the United States under the age of 16."). Petitioner timely renewed his DACA status every two years.[1] (Doc. 6-1 at 2–3.) Specifically, Petitioner renewed his DACA on May 26, 2015 (approved on July 6, 2015), on July 6, 2017 (approved on November 2, 2017), on October 4, 2019 (approved on October 30, 2019), on October 28, 2021 (approved on January 21, 2022), and January 17, 2024 (approved on May 13, 2024).[2] (Doc. 6-1 at 2–3.) Petitioner sought to renew his DACA on May 11, 2026, but that application remains pending. (*Id*. at 3.) Petitioner applied for work authorization sometime in May 2024, which was approved and valid until May 2026. (*See* Doc. 1-1.)

On February 17, 2016, Petitioner was arrested and charged with possession of marijuana, but those charges were dismissed. (Doc. 6-1 at 3; Doc. 6-3 at 5.) On June 14, 2026, Petitioner was arrested for driving while intoxicated and charged under Tex. Pen. Code § 49.04(d). (Doc. 6-1 at 3; Doc. 6-3 at 6.) Those charges remain pending. (*See id*.) After his arrest, Immigration and Customs Enforcement lodged an I-247 detainer. (Doc. 6-1 at 2.) On June 16, 2026, local police transferred Petitioner into ICE custody. (*Id*.) The Department of Homeland Security

---

[1] According to USCIS's website, individuals "who demonstrate that they meet the [DACA] guidelines . . . may request consideration of deferred action for childhood arrivals for a period of 2 years, subject to renewal for a period of 2 years, and may be eligible for employment authorization." *See* U.S. Citizenship & Immigr. Serv., *Consideration of Deferred Action for Childhood Arrivals (DACA)*, Frequently Asked Questions https://www.uscis.gov/humanitarian/consideration-of-deferred-action-for-childhood-arrivals-daca/frequently-asked-questions (last visited Aug. 26, 2026).

[2] Although the I-213 indicates that Petitioner applied for DACA renewal on January 17, 2026, that was likely in error because the I-213 then indicates that the renewal application was approved on May 13, 2024. (*See* Doc. 6-1 at 3.) As such, it is more likely that Petitioner applied for DACA renewal on January 17, 2024, which was approved on May 13, 2024, was valid for approximately two years, and then Petitioner again applied for DACA renewal on May 11, 2026, which remains pending. (*See id.*)

subsequently issued a Notice to Appear charging Petitioner as removable under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act (INA). (Doc. 6-2 at 1.) Petitioner's removal proceedings are ongoing, and he is not subject to an order of removal. *See* EOIR, Automated Case Information, https://acis.eoir.justice.gov/en/caseinformation (last visited August 26, 2026). Petitioner is detained at California City Detention Center. (Doc. 1 at 4.)

On August 7, 2026, Petitioner filed a petition for writ of habeas corpus arguing that his detention without a pre-deprivation hearing violates the Fifth Amendment Due Process Clause and relevant provisions of the INA because he is entitled release on bond or conditional parole under 8 U.S.C. § 1226(a). (Doc. 1 at 2–3, 10–11.) On August 12, 2026, Respondents filed an opposition arguing that Petitioner is mandatorily detained under 8 U.S.C. § 1225(b)(2)(A) as an applicant for admission, but concede that under *Rodriguez Vazquez v. Bostock*, 2026 WL 2196424 (9th Cir. July 30, 2026), Petitioner is entitled to a custody redetermination hearing before an Immigration Judge. (Doc. 6.) On August 19, 2026, Petitioner filed a reply. (Doc. 7.)

## IV. DISCUSSION

Petitioner immigrated to the United States as a minor and has lived in the United States with valid DACA status for the past 13 years. (Doc. 6-1 at 2–3.) Considering Petitioner's receipt of DACA protections since 2013, the Court finds that Petitioner's detention is more properly governed by 8 U.S.C. § 1226(a), then § 1225(b)(2)(A). First, Petitioner has been living in the United States with lawful DACA status for years and was apprehended in the interior of the country, as opposed to at the border while "seeking admission" into the country. *See Otilio B.F. v. Andrews*, *et al.*, 809 F. Supp. 3d 1038, 1044, 1050 (E.D. Cal. 2025) (finding that petitioner, who had immigrated to the United States at two years old and had a pending U-Visa application, was not actively seeking lawful entry under § 1225(b)(2)(A) "because he had already *entered* the United States—over twenty years ago" and if anything was "seeking to *remain* in the United States") (emphasis in original); *Rodriguez Vazquez v. Bostock*, --F.4th--, 2026 WL 2196424, at *10 (9th Cir. July 30, 2026) ("[W]e conclude that § 1225(b)(2)(A), based on its text and context, is best construed as applying to aliens entering the United States at the border. Section 1226, by contrast, is best understood as governing inadmissible and deportable aliens present in the

interior of the United States.”).

Second, Petitioner’s situation is analogous to petitioners who were encountered and released on supervision. This is because DACA requires a robust showing regarding lack of flight risk or danger to the community, which in essence, is the same determination made by immigration officials under § 1226(a). *See Ortiz Donis v. Chestnut, et al.*, No. 1:25-cv-01228-JLT-SAB, 2025 WL 2879514, at *1 (E.D. Cal. Oct. 9, 2025) (explaining that in releasing the petitioner into the interior of the country after apprehending him at the border, “immigration officials necessarily determined that [petitioner] did not present a risk of flight or danger to the community”); *see also* 8 C.F.R. § 1236.1(c)(8) (“Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in section 236(c)(1) of the Act, under the conditions at section 236(a)(2) and (3) of the Act; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding.”). As best explained in *Gamez Lira*,

> In the context of immigration, a period of detention must “bear[] a reasonable relation to the purpose for which the individual was committed.” *Demore v. Kim*, 538 U.S. 510, 516–17 (2003).
>
> Ordinarily, an immigrant charged with removability is committed to ensure he will appear at subsequent removal proceedings; in other words, to ensure that he is not a flight risk. Here, no such risk was present. Petitioner asserts that “the renewal of DACA itself constitutes a robust showing regarding lack of flight risk or danger to the community.” Pet. at 12. Indeed, to be eligible for DACA, applicants must demonstrate that they came to the United States before the age of 16, have continuous residence in the United States since 2007 and undergo a criminal background check. *See* 8 C.F.R. § 236.22(b)(1)–(6). Petitioner demonstrated these elements when he applied for deferred action over ten years ago. Moreover, Petitioner is authorized for employment and provides for four children in the United States, including an infant he has with his current wife. Therefore, he is unlikely a flight risk insofar as would justify his detention pending the adjudication of his removal proceedings. On this basis, the Court finds that Petitioner has made a showing that he is likely to succeed on the merits of his substantive due process claim.

*Gamez Lira v. Noem, et al.*, No. 1:25-cv-00855-WJ-KK, 2025 WL 2581710, at *2–3 (D.N.M. Sept. 5, 2025). Similarly, here, Petitioner demonstrated he was not a flight risk or danger when

he applied and successfully renewed his DACA application for the past thirteen years, along with obtaining work authorization in recent years. *Id.*; (Doc. 1-1; Doc. 6-1 at 2–3).

However, that is not the end of the inquiry. In analogizing to § 1226(a) caselaw, this Court recognizes that "DHS at any time may revoke a bond or parole issued pending a removal decision and then rearrest the alien" when there is a "material change in circumstances." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017) (internal citations and quotations omitted). Petitioner was recently arrested and charged with violating Tex. Pen. Code § 49.04(d) for driving under the influence. (Doc. 6-1 at 3; Doc. 6-3 at 6.) Considering this pending charge and given that Petitioner's recent DACA renewal application is pending review, (Doc. 6-1 at 3), it is unclear whether Petitioner would still be eligible for DACA. *See* 8 C.F.R. § 236.22(b)(6) ("The [DACA] requestor must not have been *convicted* of a . . . *misdemeanor* described in paragraph (b)(6) . . . . For purposes of this paragraph (b)(6) only, *a single misdemeanor is disqualifying if it is a misdemeanor* as defined by Federal law . . . and that meets the following criteria: (i) . . . is an *offense of* . . . *driving under the influence*.") (emphasis added). While USCIS has not yet made that determination and Petitioner has not yet been convicted of his DUI charge, given the change in circumstances, the Court concludes a post-deprivation bond hearing is the appropriate remedy in this case.

For the foregoing reasons, the Court **ORDERS:**

1. The petition for writ of habeas corpus (Doc. 1) is **GRANTED IN PART**;

2. **Within 14 days** of the date of service of this order, unless Petitioner consents to a later date, Respondent **SHALL** provide Petitioner with an individualized bond hearing before an immigration judge that complies with the requirements set forth in *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011), and where "the government must prove by clear and convincing evidence that [Petitioner] is a flight risk or a danger to the community to justify denial of bond," *id.* at 1203. In the event Petitioner is "determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond," the immigration judge should consider Petitioner's financial circumstances and alternative conditions of release. *Hernandez v. Sessions*, 872 F.3d 976, 1000 (9th Cir. 2017).

3. **__At least 72 hours before__** the scheduled hearing, Petitioner **SHALL** receive notice of the hearing. He **SHALL** have the right to be represented by counsel at the hearing, and he **SHALL** be entitled to appear at the hearing. If counsel has filed an appearance in the immigration proceedings, **__at least 72 hours__** before the hearing, counsel **SHALL** receive notice of the scheduled hearing.

4. Respondents **SHALL** provide a copy of this Order to the Immigration Judge presiding over the bond hearing and **SHALL** arrange for the bond hearing to be recorded.

5. The Clerk of Court is directed to serve the California City Detention Facility in California City, California with a copy of this Order.

6. The Clerk of Court is directed to close this case and enter judgment for Petitioner.

IT IS SO ORDERED.

Dated: _August 27, 2026_

Jennifer L. Thurston
UNITED STATES DISTRICT JUDGE